By the Court,
Robertson, J.
The. learned justice before whom this cause was tried states, in his decision, as a conclusion of law, that a receiver to be appointed in this action should “possess himself of all property which went into the hands of (the. defendant) Burdick or the proceeds thereof; and out of the proceeds of any property that may come to * * his hands pay” the judgment of the plaintiffs, with interest and costs ; also that “ the plaintiffs are entitled to a judgment against the defendants, Bridge and Burdick, for their costs, in case the fu.nds in the hands of the receiver are insufficient to pay them.” The Code requires that “judgment upon a decision shall be entered accordingly,” (§267.) The formal judgment, as entered in this case, requires the defendant Burdick to assign to the receiver thereby appointed not only all goods and debts transferred to him by the defendant Bridge, in 1861, still remaining in his hands, but also the proceeds of such goods or debts as have been sold. It also provides for the payment of the claim *463 of the plaintiffs out of the moneys to come into the receiver’s hands as such; and adjudges that the plaintiffs recover their costs against the defendants, Burdick and Bridge, in case the moneys in such receiver’s hands are not sufficient to pay them. No provision is made therein for any mode of ascertaining what such goods or debts-remaining undisposed of, or the proceeds of such sales, were ; nor was any evidence taken on the trial of either; so that the only mode of determining what they are, is by a new litigation between such receiver and the defendant, Burdick, to take place in this action or some other to. be brought for the purpose. If, in this action, it would seem that judgment had not been rendered, except as to costs, because there was no “ final determination of the rights of the parties.” (Oode, § 245.) Indeed, on examination, all the real issues in the action will be found not to have been tried or disposed of by the judgment. One clearly was, whether the defendant, Burdick, had in his hands any property which he was bound to apply to the payment of the plaintiffs’ judgment. The questions of the validity of the transfers to such defendant by the defendant Bridge, though preliminary to rendering the defendant Burdick so liable, became wholly immaterial, unless he had in his hands some proceeds of sales or some debts or goods for which he was bound to account. In that event, the quantity and kind of goods and character of debts, as well as. amount of proceeds, should have been either proved on the trial or left for determination by a referee, the court rendering in the mean time a contingent judgment, dependent upon the amount found due by such referee. In order, however, to warrant- such contingent judgment, it should either have appeared that there were goods remaining unsold, and debts uncollected, in the1 hands of the defendant Burdick, or he must be determined to be responsible for such proceeds; By the testimony of the only witness examined as to the sale of the goods, (the defendant Burdick,) they- all appear to have been sold by the spring following- the purchase, (1862,) before the commencement of this action and before the issuing of execution on the plaintiffs’ judgment. By the same witness, on his cross- *464 examination, it appears that most of the purchased debts and notes not collected are bad ; so that unless some of such bills and notes still are collectable, nothing remains in the hands of Burdick applicable to the payment of the plaintiffs’ judgment, except the proceeds of goods and debts received by him before the issuing of execution on the judgment of the plaintiffs. The defendant, Burdick, paid for such stock of merchandise upwards of twenty-four thousand dollars in notes, delivered over to creditors of the defendant Bridge, in satisfaction of their claims) and since taken up by him. It does not appear how much he received'from the sale of such goods. He also, as he testified, gave notes for nearly thirty-seven thousand dollars, as the consideration for the claims purchased by him, out of which he only realized twenty-six thousand dollars, which notes were also delivered by Bridge in satisfaction of creditors’ debts, and paid. He has therefore paid upwards of sixty thousand dollars, in fact, in discharge of claims against Bridge, equally meritorious with that of the plaintiff,'as a consideration for the transfer to him of the property of such debtor. The notes having arrived at maturity, and being paid, before any steps taken by the plaintiff, the payment thereof, as regards him, is placed in the same situation as if Burdick had at the time, and in consideration of the transfers to him, paid such debts ; and at least as to a quantity of goods and debts equal in value to such payments, he would have an equity to be reimbursed. But, in fact, the statute against fraudulent conveyances, (2 R. S. 68,) merely avoids the transfer, and leaves the property transferred as the insolvent debtor’s to be applied to the payment of his pursuing creditors. A sale by a vendee or assignee to a bona fide purchaser, transfers a valid title, yet the statute does not declare the money or other article for which such transferred property is exchanged, to be also liable for the pursuing creditors’ claims. If Burdick had been a fraudulent general assignee for the benefit of creditors, he would have been entitled to credit for moneys paid by him, pursuant to such assignment, before any equitable or legal lien was obtained by the plaintiff in this action. (Wakeman v. Grover, 4 Paige, 23. Ames v. *465 Blunt, 5 id. 13. Barney v. Griffin, 4 Sandf. Ch. 552. Averill v. Louck, 6 Barb. 470. Bostwick v. Berner, 10 Abb. Pr. 197. Collumb v. Read, 24 N. Y. Rep. 505.) In Butler v. Stoddard, (7 Paige, 163,) a fraudulent vendee was held entitled to retain the proceeds of the sale of goods transferred to him, and moneys collected by him before the lien of the pursuing creditor, who was plaintiff, attached, only because he gave as consideration for such purchase the discharge of a debt due to him. Courts do not, in any case, seem to have made a fraudulent purchaser liable for the proceeds of goods sold by him previously fraudulently assigned to him, as proceeds of property belonging to the debtor, which ought to be applied to the payment o.f his creditors. The utmost they have done, even when the goods were not sold, seems to have been to ratify the transfer, correcting it by purifying it of the fraud in the shape in which it existed. Thus in Weed v. Pierce, (9 Cowen, 722,) where the fraud consisted in the sale of goods on a long credit, it was considered that the fraud consisted in the length of such credit, and Walworth, J. (afterwards chancellor,) held such purchasers to be liable as for a cash purchase, and for the benefit of the creditors of the sellers reached their responsibility therefor, as a debt due to the insolvent debtor, payable forthwith. Possibly, applying the same principle to goods sold by an insolvent debtor, where the fraud consists in a.sale at an under price, the pursuing creditor may reach the difference between that and a fair price, as a debt still due the debtor, for the benefit of such creditor. But in this case no evidence was given of such difference : nor was any reference ordered in the judgment to ascertain it. No materials were therefore furnished, on the trial, or means adopted by the judgment to furnish them, to complete that judgment.
Upon the foregoing views of the law applicable to the case, the direction to the defendant Burdick to" pay over to a receiver the proceeds of any goods sold or moneys collected by him as such proceeds or money collected, was clearly erroneous. The direction to deliver over any goods unsold was. equally so, when the only evidence in the case is that they were sold before *466 any lien was obtained thereon by the plaintiffs. The transfer of the debts uncollected might be proper, if they are of any value ; but if the last prove to be valueless, and their assignment is the only relief obtained by the plaintiff, the defendant Burdick ought not to be charged with costs.
Although the decision filed declares the judgment obtained by Burdick on the 24th of June, 186T, upon the offer of the defendant Bridge, to have been entered with a fraudulent intent, and the appointment of a receiver upon supplementary proceedings taken thereon to have been collusive, the formal judgment is silent ág to such judgment and appointment. And although the latter does not declare such judgment void, it does not allow the defendant Burdick to retain, or the receiver to pay the amount of such judgment, although its lien, was prior to that of the plaintiff on the defendant Bridge's property. If the supplementary proceeding is not interfered with, it may be proper to appoint the same receiver in this action; but the equities of different claimants upon the funds in his hands must be settled in an application in such proceedr ing as well as in this action. Unless such judgment of the defendants is to be set aside, the peremptory direction in the formal judgment in this action, to pay the plaintiffs' claim without regard thereto, would be improper.
The direction to the defendant Burdick to pay into the receiver's hands more than sufficient to satisfy the present plaintiff’s claim and for the receiver to pay the surplus into court, w;as not necessary. The plaintiff brought his action to procure satisfaction of his own claim only. When the action is ended and he is satisfied, there is no basis left for jurisdiction by the court over a fund in the defendants* hands. For what pimpose, or length of time, and on what principle they are to be retained does not appear. It certainly might encourage or invite actions by other creditors, but that is no part of the right of the plaintiff, or the duty of the court. That direction should therefore not have been part, of the judicial determination of the rights of the parties in this action. So *467 also the reservation of the power of what is called further directions, being either unnecessary or a usurpation of a power, of control over some rights after the final judgment, (Code, § 245,) is improper;
The remaining, questions which present themselves are whether the formal judgment so finally disposes of the rights of the parties as to be susceptible of modification. If not, whether the decision on which it is based does so. If neither does so, the judgment must of course be reversed and a new trial ordered. In regard to the second case the formal judgment might be vacated, with liberty to the plaintiffs to apply for leave to file a new judgment corresponding with the decision, and disposing of all the rights of the parties; or to the justice who tried the case, for any amendment which he can legally make of his decision. In regard to the first, any erroneous provisions not essential to the judgment might be stricken out or changed. But I apprehend the defects in the formal judgment as a disposition, of the rights of the parties cannot be cured by any thing short of a new judgment; and the decision so fails to provide for any means of ascertaining what amount the defendant Burdick is to pay, or what goods he is to deliver, while it adjudges him to deliver the proceeds of all the goods assigned to him, and by him sold, that it cannot be altered so as to conform to the views already expressed as to such defendant’s liability. The question of costs cannot well be disposed of before- the relief to be granted is determined. I do not see any escape from the dilemma, except by subjecting the parties to a new trial, by a reversal of the judgment.
As this view of the case disposes of it, it is unnecessary, as it might be improper, to express any impression as to the question of fact in regard to the fraud in the transfers and confession'of judgment to the defendant Burdick, particularly as the learned judge before whom the cause was tried gave no reasons therefor in his opinion. It may not be improper, however, to suggest that this being an equitable action, this court *468 has no equitable jurisdiction to vacate such judgments, although it may enjoin the defendants from availing themselves of them as against the plaintiffs.
The judgment should therefore he reversed, and a new trial had, with costs to abide the event.